William E. McClusky, J.
These are proceedings under article 79 of the Civil Practice Act to terminate the trust set forth in the two petitions and to account thereunder.
In October, 1954 a collective bargaining agreement in writing was entered into between the Heating, Piping and Air Conditioning Contractors Association and Local 79 of Utica of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. Both contracting parties were unincorporated associations, consisting of seven or more members. Later and in April, 1956 some of the contractors associations withdrew and a new organization was, formed, known as the Central New York Association. That association and the Union entered into a collective bargaining agreement in April, 1956, setting forth the same terminology as in the contract previously mentioned. The contract was for a period of two years and was subsequently renewed.
Pursuant to section 1 of the original agreement there were established two funds. The first fund was known as the “Welfare Fund ” to be administered by trustees to be designated in equal numbers by the parties to the contract. That fund was to be created and maintained by the employers, members of the Contractors Association, paying into the “ Welfare Fund ” a sum equal to seven and one-half cents per man per hour employed.
The manner in which the trustees were to be selected and operate the fund, etc., was set forth in a trust agreement in writing dated September 28,1955. There is no question involved in these proceedings relative to the validity of the Welfare Funds created by the several labor agreements.
In the same paragraph in the agreements involved herein there was a further “ fringe ” clause, which provided that the sum of two and one-half cents per man per hour employed weekly be paid into Local 79’s and Heating, Piping Contractors’ “ Promotional Funds ”. Both the funds, it provided, were to be administered jointly by committees with equal representation of the Union and Employers. The contract was renewed in April, 1956. That contract provided that 1 ‘ the promotional will continue at 2% cents per hour per man weekly until April 30th, 1958 in Local 79 and Mechanical Contractors Promotional Fund ’ ’. The funds have been paid thereunder until April 30, 1958 but no written agreement of any kind has been *127 signed relative to the promotional funds. The funds were under the control of the joint committees in bank accounts in Utica, New York.
.The amount collected under the first agreement amounts of $10,604.25, and under the agreement mentioned in the second petition that fund amounts to $8,712.27. The petitioners in each proceeding seek a declaration that the funds were improperly established and that the sums so accumulated should be returned to the settlors of the trust according to their contributions to the two funds.
All parties to these proceedings concede that the labor agreements involved herein are governed by the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 141 et seq.) as enacted by Congress.
Section 302 (U. S. Code, tit. 29, § 186) of that law provides that it shall be unlawful for an employer to pay or for any representative to receive any money or thing of value one from the other except as provided in subdivision (c) of that section. Paragraph (5) of subdivision (c) thereof provides for an exception in the case of welfare trust funds. Three conditions are laid down for a valid welfare fund. The pertinent parts of paragraph (5) of subdivision (c) are as follows: “with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such *128 dispute, or in the event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities.”
It is clear that the funds so received are to be held in trust for the purpose of paying either from principal or income or both. Furthermore, “ the detailed basis on which such payments are to be made is [to be] specified in a written agreement with the employer, and employees and employer are [to be] equally represented in the administration of such fund ’ ’.
The final proviso is that such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate fund and cannot be used for any other purpose.
The purposes for which the promotional funds were to be used were not specified in the labor agreements. The funds were not to be used for welfare purposes. Such funds came from another source and were dealt with under a specific agreement. The only indication is a reference in the minutes of a meeting of one of the contracting parties that the fund was being established for a promotional and educational fund to stimulate new business and to increase employment in the industry. However, that terminology was never incorporated in any of the labor agreements. It may well have been the intent of the parties but there is no contract or writing to enlighten the court upon the subject. It is not an addition to the welfare fund.
The Taft-Hartley Act (Labor Management Relations Act, 1947), from which excerpts have been quoted, prohibits the payment of money by employers to the representatives of employees except for the purposes previously noted.
The Supreme Court of the United States has held that the term “ representative of employees ” as set forth in section 302 of the Labor Management Relations Law means and includes “ any person authorized by the employees to act for *129 them in dealing with their employers ”. (United States v. Ryan, 350 U. S. 299, 302.)
Accordingly any payment made by an employer to the representative of his employees is criminal and prohibited unless it comes within the exceptions listed in paragraph (5) of subdivision (c) of that section.
Substantially the same question involved herein was raised in Mechanical Contractors Assn, of Philadelphia v. Local Union 420 ( 265 F. 2d 607 [U. S. Ct. App., 3d Cir., April 13, 1959]). There a two and one-half cents per man per hour contribution was provided for in the main labor agreement. Payments were made into an Industry Fund to be managed by representatives of labor and management. The plaintiff bargaining agent refused to sign upon the ground that the fund provided for was prohibited by section 302 aforesaid. The declaratory judgment action followed. The Circuit Court held that payment to a joint board for the purposes in a supplemental agreement were not those specified in paragraph (5) of subdivision (c) of section 302 aforesaid. The court stated as follows (p. 611): “Thus the essence of Section 302 [IT. S. Code, tit. 29, § 186] may be summarized as follows: No fund derived from employer contributions may be administered by persons designated by a union unless the fund meets the standards set forth in Section 302 (c), (5). Any employee-designee administering the fund not meeting the requirements of section 302 (c) (5) is a 1 representative ’ within the meaning of Subsections 302 (a) and (b).”
From the law and the cases cited this court concludes that the provisions in the several contracts herein for the payment of two and one-half cents per hour per man into a promotional fund were and are invalid.
The question then posed is, to whom do the funds belong! Of course, the argument is advanced that these funds belong to the Union. But the answer to that is that the language of the several contracts is entirely contrary to that. Provision was made for a specific increase in hourly rate and for fringe benefits but nowhere in the contract does there appear any indication that the “promotional fund” was to inure to the benefit of the individual members of the local. No trust agreement was ever executed. No moneys were paid out of the fund. Since the fund is not one recognized as legal under the Labor Management Relations Act, the fund belongs to those who created it. The so-called' trustees of the fund are actually custodians.
*130 Obviously situations similar to the case at bar are ‘ ‘ few and far between Scott on Trusts has this to say upon the subject: “ § 422.4. * * * Where the settlor was ignorant of the facts which made the trust illegal, he is not precluded from recovering the property from the trustee. * * * There are many situations where a trust fails for illegality, but where the conduct of the settlor in creating the trust is not so blameworthy that there is any public policy which would preclude his recovering the property from the trustee.”
In the Restatement, Trusts (§ 422, Comment e) there is a clear statement of general principles applicable: “If the owner of property transfers it inter vivos upon a trust which fails for illegality, the transferee ordinarily holds it upon a resulting trust for the transferor if the transferor at the time of the transfer was ignorant of the facts which made the trust illegal.”
Corpus Juris Secundum (89 C. J. S., Trusts, § 103, p. 953) states: “A resulting trust in favor of the grantor arises where property is conveyed on a trust which is illegal or unauthorized ’ ’. The resulting trust is created by operation of law and does not arise out of nor is it dependent on contract.
This court holds, therefore, that the sums paid into the respective funds are not the property of the Union nor of the members thereof but are the property of the respective contractors, subject, of course, to the expenses of these proceedings.
The petitioners are to file an account of their proceedings showing in detail the names and amounts paid by the respective contractors. Thereafter, this court will determine and fix the expenses and legal fees chargeable for the proceedings and direct distribution. Thereafter the petitioners will be discharged.
Prepare orders accordingly.